# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DUVAL BRANCH, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | 3:15-CV-1971 |
| | : | (JUDGE MARIANI) |
| BRIGDON ODHNER, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Magistrate Judge Saporito's Report and Recommendation ("R&R"), (Doc. 108), and Amended Report and Recommendation ("Amended R&R"), (Doc. 115), on two Motions for Summary Judgement filed in the above captioned matter, (Docs. 88, 89). The underlying action concerns an interaction that Duval Branch had with then Rush Township Police Officer Brigdon Odhner on May 12, 2015. On that date, Branch, an African-American male, was going door-to-door in Rush Township on behalf of TruGreen Lawn Care when he was approached by Odhner and asked to produce a solicitation license. After Branch admitted that he did not have a solicitation license, Odhner informed Branch that he could not continue soliciting. Odhner then drove Branch in the back of Odhner's police car to Branch's nearby vehicle.

As a result of the incident, Branch initiated suit against Odhner and Rush Township on October 9, 2015. (Doc. 1). Branch's Amended Complaint asserts seven claims: a 42

U.S.C. § 1983 claim against Odhner for violation of Branch's Fourth Amendment rights, (Count I), a section 1983 claim against Rush Township for violation of Branch's Fourth Amendment rights, (Count II), a section 1983 claim against Odhner for violation of Branch's Fourteenth Amendment rights, (Count III), a section 1983 claim against Rush Township for violation of Branch's Fourteenth Amendment rights, (Count IV), a section 1981 claim against Odhner and Rush Township, (Count V), a state law claim against Odhner for false arrest and false imprisonment, (Count VI), and a state law claim against Odhner for intentional infliction of emotion distress, (Count VII). (Doc. 8).

At the close of discovery, Odhner and Rush Township filed separate Motions for Summary Judgement. (Docs. 88, 89). On September 12, 2017, Magistrate Judge Saporito issued an R&R recommending that Rush Township's Motion for Summary Judgment be granted in its entirety and that Odhner's Motion for Summary Judgment be granted in part and denied in part. (Doc. 108 at 44). Specifically, the R&R recommended that Judgement should be entered in favor of Defendants on all claims with the exception of the Fourteenth Amendment and section 1981 claims against Odhner. (Id.).

Branch and Odhner timely filed partial objections to the R&R. (Docs. 109, 111). Before those objections were fully briefed, however, Magistrate Judge Saporito issued an Amended R&R which supplemented his prior R&R. (Doc. 115). The Amended R&R retained many of the original R&R's recommendations, but now recommended denying summary judgement with respect to the Fourth Amendment claim against Odhner and the

2

state law false arrest and false imprisonment claims based on a line of cases raised for the first time in Branch's objection to the original R&R. Branch and Odhner thereafter filed partial objections to the Amended R&R. Those objections are now fully briefed and ripe for resolution. After *de novo* review of the R&R and Amended R&R, and for the reasons set forth below, this Court overrules Odhner's objections, overrules Branch's objections, and adopts the Amended R&R's recommendations.

## II. STATEMENT OF FACTS

No party has objected to the summary of facts found in the R&R. (Doc. 108 at 1-16). The Court therefore adopts that section and incorporates it herein.

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct.

3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

4

*material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

The R&R and Amended R&R addressed both Defendants' Motions for Summary Judgment. The Court will address the claims against Odhner and Rush Township separately.

### A. Claims Against Odhner

With respect to the claims against Odhner, the Amended R&R recommends granting summary judgement only on the intention infliction of emotional distress claim. Branch and Odhner have each raised objections to portions of the R&R and the Amended R&R. The Court will discuss these objections in turn.

*1. Fourth Amendment Claim*

In Count I of his Amended Complaint, Branch claims that the actions of Odhner, specifically Odhner's act of compelling Branch to be driven by Odhner to Branch's car, constituted an arrest without probable cause and was therefore an unlawful seizure in violation of the Fourth Amendment. The R&R first concluded that, viewing the evidence in a light most favorable to Branch,

Odhner's insistence that Branch accept his offer of a ride rather than walk the short distance to his car, coupled with Odhner's body language—his visible agitation and the positioning of his hand on his gun holster—and his

5

insistence that Branch ride in the back of the police vehicle instead of the front, taken together, are sufficient to establish a genuine dispute of material fact with respect to whether Branch was "arrested" or seized for Fourth Amendment purposes.

(Doc. 108 at 21).

Odhner argues that this conclusion, which does not change from the R&R to the Amended R&R, is flawed. (Doc. 119 at 8-9). Odhner bases his objection on *James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012). In *James*, a mother claimed that she was seized when an officer insisted that at least one parent accompany their child who was being transported to the hospital. *James*, 700 F.3d at 678. The Third Circuit found that the plaintiff's "Complaint pleads only that the officers 'insisted' that one parent accompany" the child, and that "insistence alone is insufficient to constitute a seizure under the Fourth Amendment." *Id*. at 681.

Here, as the R&R correctly concluded, there is evidence in the record that Odhner did more than just insist that Branch accept the ride in Odhner's police vehicle. Specifically, Branch testified that Odhner stated "I'm going to have to have you come with me," and that Branch had "to get in the back seat of the car." (Dep. of Duval Branch, Doc. 105 at 85). Branch further testified that

I could tell by [Odhner's] body language, he was getting a little agitated that I was telling him that I wasn't getting into the back seat of his car, and he had his hand on his holster. And I just pretty much was going back and forth with him on why I shouldn't be getting in the back seat of the police car. And after a while of me and him going back and forth, I agreed to go.

6

(*Id.*). Branch further testified that during this five to ten minute back and forth Odhner "raised his voice a little bit." (*Id.*). Finally, Branch testified that he offered to walk himself to his car, which was within sight, but Odhner repeated that Branch needed to get into the back of Odhner's police vehicle. (*Id.*). Thus, the facts of this case fall outside of *James* because the alleged seizure here is predicated on more than Odhner's mere insistence.[1] *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980) ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be . . . the display of a weapon by an officer . . . or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.").

Odhner, however, argues that because Branch was told that he was not being arrested and ultimately "agreed" to getting into Odhner's car, the encounter did not amount to an arrest. The fact that Branch was told he was not under arrest, while not immaterial, is not dispositive. *See Dunaway v. New York*, 442 U.S. 200, 203, 207, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979) (finding "[t]here can be little doubt that petitioner was 'seized' in the Fourth Amendment sense" despite the fact that petitioner was told he was not under arrest). Similarly, the fact that Branch got into Odhner's car without being physically forced to do so does not mean he was not seized. Indeed, generally all "show of authority" type seizures

---

[1] Odhner also cites *INS v. Delgado*, 466 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984). *Delgado*, however, concerned "whether mere questioning of an individual by a police official, without more, can amount to a seizure under the Fourth Amendment." *Id.* at 216. This case undoubtedly involves more than "mere questioning" as Branch ultimately ended up in the back seat of Odhner's police vehicle.

lack the element of physical force. *See California v. Hodari D.*, 499 U.S. 621, 226, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991) ("An arrest requires either physical force . . . or, where that is absent, submission to the assertion of authority.").

Accordingly, the Court will overrule Odhner's objection on this ground and adopt the R&R's finding that a dispute of fact exists as to whether Branch was arrested when he complied with Odhner's instructions to get into the back of the police vehicle. (Doc. 108 at 20-22).

After determining that a dispute of fact existed as to whether Branch was arrested, the R&R went on to analyze whether the arrest was supported by probable cause. The R&R concluded that Odhner did have probable cause to believe that Branch was violating the Rush Township ordinance against soliciting without a license. Accordingly, the R&R recommended granting summary judgment on Branch's Fourth Amendment claim.

In his objections, Branch concedes that there was probable cause that he violated the Rush Township ordinance.[2] (Doc. 110 at 8). Nevertheless, he argues that, based upon *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005), and *Rodriguez v. United States*, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), the seizure violated Branch's Fourth Amendment rights because it was extended beyond the seizure's "mission" of

---

[2] Although not raised by any of the parties or in either of the R&Rs, the Court notes that Branch's solicitation may not have in fact violated the ordnance. The ordinance at issue prohibits "[e]ngaging in peddling, canvassing, soliciting or taking orders, either by sample or otherwise, for any *goods, wares or merchandise*" without a license. (Doc. 90-3 at 1, 2) (emphasis added). Although the record is not entirely clear on this point, it appears the Branch was selling lawn care services, not goods, wares, or merchandise. Nevertheless, the Court need not dwell on this point in light of Branch's concession that there was probable cause that he violated the ordinance. (Doc. 110 at 8).

ascertaining whether Branch was violating the Rush Township ordinance and whether to issue a citation. (Doc. 110 at 9-11). Stated otherwise, Branch argues that once Odhner determined that Branch was violating the ordinance, but that Odhner was not going to arrest Branch, Odhner violated the Fourth Amendment by extending the seizure in order to drive Branch to his car.

The Amended R&R largely adopted this reasoning and concluded that there was "a genuine dispute of material fact with respect to whether Officer Odhner's transport of Branch to his vehicle and whether Branch's continued detention at his vehicle while Odhner searched the contents of Branch's bag and wrote down Branch's personal and vehicle identification information were related to Odhner's initial 'mission.'" (Doc. 115 at 6). Accordingly, after further determining that Odhner is not entitled to qualified immunity with respect to this claim, the Amended R&R recommended denying summary judgment as to Branch's Fourth Amendment claim. (Id. at 6-9). Odhner objects to this recommendation, partially on the grounds that Caballes and Rodriguez are inapposite. (Doc. 119 at 10-11).

Upon careful review of Caballes and Rodriguez, the Court agrees that these cases, to the extent that their holdings are limited to the context of traffic stops, are not applicable. Specifically, both cases stand for the proposition that "[a] seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." Rodriguez, 135 S. Ct. at 1612 (third and fourth alteration in original) (quoting Caballes, 543

9

U.S. at 407). That is, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* at 1614 (internal citation omitted). "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 1615 (alteration in original) (quoting *Caballes*, 543 U.S. at 408).

The situation presented by this case is simply not analogous to a traffic stop. *See Rodriguez*, 135 S. Ct. at 1614 (stating that "a routine traffic stop is 'more analogous to a so-called "*Terry* stop" . . . than to a formal arrest.'" (alteration in original) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998))). Here, it is undisputed that Odhner had probable cause to believe that Branch had violated the solicitation ordinance. As such, Odhner was constitutionally permitted to arrest Branch. *See Virginia v. Moore*, 553 U.S. 164, 173, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008) ("[A] warrantless arrest satisfies the Constitution so long as the officer has 'probable cause to believe that the suspect has committed or is committing an offense.'" (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979))). Thus, unlike a normal traffic stop, Odhner needed no further justification to significantly extend the duration of the seizure by formally arresting Branch, bringing him to the police station, and booking him.

Nevertheless, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests

10

protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 124, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). In the context of arrests made based upon probable cause, a seizure may still be unreasonable under the Fourth Amendment if it is "conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests—such as, for example, seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body." *Whren v. United States*, 517 U.S. 806, 818, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (citations ommited); *see also United States v. Wilson*, 699 F.3d 235, 243 (2d Cir. 2012); *Armstead v. Twp. of Upper Dublin*, 347 F. Supp. 2d 188, 195 (E.D. Pa. 2004). "[T]he question whether a search or seizure is 'extraordinary' turns, above all else, on the manner in which the search or seizure is executed." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).

Here, viewing the evidence in a light most favorable to Branch, the seizure in this case was somewhat unusual. After investigating whether the solicitation ordinance had been violated, Odhner arrested Branch, drove Branch to his nearby car, searched Branch's bag,[3] took down some additional information, and then released him. Although the

---

[3] Although Odhner argues that Branch consented to the search of his bag, Branch testified as follows:

> Q. When I got back to my vehicle, [Odhner] asked me -- he says, "I need to check your bag." And then I asked him -- I said, "I thought you were going to check that even before I got into the vehicle." He said, "I need to check it just to make sure." And I said, "Okay."

> Q. So you said okay to checking your bag?

11

undisputed fact that Odhner had probable cause to believe that Branch violated the ordinance would have allowed Odhner to formally arrest Branch without violating the Constitution, that is not what occurred. Instead, an objective review of the totality of the circumstances indicates that Odhner used the arrest to coercively transport Branch to Branch's car in Odhner's police vehicle. On its face, there is no legitimate government interest in such an activity. *Cf. Caldarola v. Cty. of Westchester*, 343 F.3d 570, 576 (2d Cir. 2003) (noting that transporting a suspect to the police station was a legitimate purpose of an arrest); *Moore*, 553 U.S. at 173-74 (noting that a formal arrest for violation of a minor offense served the purpose of "ensur[ing] a suspect's appearance at trial, prevent[ing] him from continuing his offense, and enabl[ing] officers to investigate the incident more thoroughly."). Therefore, the Court finds that there is at least a dispute of fact as to whether the manner of the seizure was extraordinary and, consequently, unreasonable under the Fourth Amendment despite the presence of probable cause.

---

A. Yeah. I was just at that point trying to comply with him as much as possible.

Q. Okay. And did he check your bag?

A. Yes.

(Dep. of Duval Branch, Doc. 105 at 88). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *see also United States v. Murray*, 821 F.3d 386, 391 (3d Cir. 2016). According to Branch's testimony, he was not asked whether he consented to Odhner searching his bag, but was told that Odhner "need[ed] to check" Branch's bag. This statement may have been coercive in that it implies that Branch does not have the option to say no. Further, as Odhner's statement did not call for a response, Branch's answer does not necessarily indicate that he consented to the search but instead may simply have been an acknowledgement that he heard what Odhner had said. Thus, on this record, the Court cannot say that it is undisputed that Branch consented to the search of his bag.

12

Finally, the Court finds that Defendant is not entitled to qualified immunity on Branch's Fourth Amendment claim. As already discussed, there are disputes of fact as to whether Odhner violated Branch's Fourth Amendment rights. As to the second qualified immunity prong, a right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614-15, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (alteration and quotation marks omitted). That "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (quotation marks omitted).

Here, while it is beyond doubt that the right to be free from unreasonable searches and seizures is a well established right, the Court also finds that it is well established that a seizure based upon probable cause may still violate the Fourth Amendment if the manner of the seizure is extraordinary and unreasonable. *See, e.g., Jacobsen*, 466 U.S. at 124; *Whren*, 517 U.S. at 818; *Atwater*, 532 U.S. at 354; *Wilson*, 699 F.3d at 243; *Armstead*, 347 F. Supp. 2d at 195. Further, it is sufficiently apparent that an arrest that has no legitimate law enforcement purpose, such as arresting an individual only to transport him to his car, is extraordinary and unreasonable. Accordingly disputes of fact prevent a finding that Odhner is entitled to qualified immunity on Branch's Fourth Amendment claim.

In sum, the Court will adopt in part this portion of the R&R and Amended R&R to the extent they are not inconsistent with this Opinion and deny Odhner's Motion for Summary Judgment on this claim.

### 2. Fourteenth Amendment Claim

Count III of Branch's Amended Complaint claims that Odhner discriminated against Branch on the basis of Branch's status as an African-American in violation of Branch's rights under the Equal Protection clause of the Fourteenth Amendment. The R&R concluded that there was sufficient evidence in the record to create a dispute of material fact as to whether Odhner acted with discriminatory intent when he arrested Branch because Odhner previously did not arrest similarly situated white individuals who were soliciting without a license. (Doc. 108 at 28-30). The R&R therefore recommended denying Odhner's Motion for Summary Judgment. While the Amended R&R added additional analysis with respect to whether Odhner was entitled to qualified immunity, it did not alter its recommendation to deny Odhner's Motion on Branch's Fourteenth Amendment claim. (Doc. 115 at 9-10).

Odhner objects to this recommendation on a variety of grounds.[4] First, Odhner claims that the R&R failed to conduct any analysis about whether Odhner had a rational basis for treating Branch differently from others. (Doc. 112 at 10-12). Under section 1983, "[t]here are two paradigms under which a plaintiff may bring an equal protection claim."

---

[4] Much of Odhner's objections presume that Branch was not arrested. Nevertheless, given that the Court has already concluded that there is a genuine dispute as to whether Branch was arrested by Odhner, the Court must view the evidence in a light most favorable to Branch and assume that he was arrested.

14

*Karchnak v. Swatara Twp.*, 540 F. Supp. 2d 540, 550 (M.D. Pa. 2008). "First, a plaintiff may

allege that she is a member of a protected class, similarly situated to members of an

unprotected class but treated differently from those in the unprotected class." *Id.*; *see also*

*Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015). "In other

words, [a plaintiff] must prove the existence of purposeful discrimination." *Oliveira v. Twp.*

*of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). "Second, she may allege that she belongs

to a 'class of one' such that '(1) the defendant treated [her] differently from others similarly

situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the

difference in treatment.'" *Karchnak*, 540 F. Supp. 2d at 550. (alteration in original) (quoting

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)).

Odhner maintains that Branch is proceeding under a class of one theory and

therefore must show that there was no rational basis for Odhner's actions. Nevertheless,

while it is true that Branch made reference to the class of one paradigm in his summary

judgment papers, Branch's Amended Complaint clearly alleges that Odhner seized Branch

because he was a member of a protected class. (Doc. 8 at ¶ 17). Accordingly, Branch's

claim can survive summary judgment if there are at least genuine disputes of material fact

with respect to whether Branch "was: (1) a member of a protected class; (2) similarly

situated to members of an unprotected class; and (3) treated differently from members of

the unprotected class." *Green*, 89 F. Supp. 3d at 693. There is no requirement to show that

15

there was no rational basis for Odhner's actions.[5]  The R&R, therefore, did not err in the

standard it applied to Branch's equal protection claim.

Next, Odhner claims that the R&R erred in finding that there were genuine disputes

of material fact that (1) there were others similarly situated to Branch and (2) Odhner acted

with discriminatory purpose.  (Doc. 112 at 4-9).  As the R&R points out, there is evidence in

the record that Odhner had at least one other encounter with a group soliciting without a

license.  Odhner testified as follows:

Q. . . . Have you ever issued a citation for solicitation without a permit?

. . .

A. Ever? Yes. We've -- I've done -- been part -- I was part of -- somebody was
soliciting meats in Tamaqua and we wrote them citations because we asked
them to leave and -- we asked them to leave one time and then we left and
we -- when we left, they just kept going.

. . .

Q. . . . We talked about an incident that happened in Tamaqua with the meat
guys that were selling the meat. You initially came upon them or you were
one of the officers who initially came upon them soliciting?

A. That's right.

Q. Okay. How did the first interaction go?

A. We told them that they needed a permit and that they should go.

Q. Okay. These individuals, were they -- what was, I guess, their race or
origin, do you know?

---

[5] Of course, at trial Odhner is free to offer evidence of non-discriminatory reasons for his actions.

A. White.

Q. They were white. Okay. How did you know that they were leaving the scene? You said, you know, like, we didn't write them a citation or anything the first time.

A. Well, they were near their vehicle and I -- at that point that was the first time I had dealt with that exact circumstance. So I assumed that they would leave.

(Dep. of Brigdon Odhner, Doc. 105 at 247, 252). Viewed in a light most favorable to

Branch, this is sufficient to raise a triable issue as to whether Odhner acted with

discriminatory purpose when he arrested Branch for soliciting without a license but did not

arrest similarly situated white individuals who were soliciting without a license even when

the white individuals failed to heed Odhner's first warning to stop soliciting.[6]

Finally Odhner argues that the Amended R&R erred in concluding that he was not

entitled to qualified immunity with respect to this claim. According to Odhner,

[t]here is no clearly established law that offering a courtesy transport to an individual to ensure that he would not continue to solicit, without citing him for a violation, where the officer had no choice as to who he would encounter in response to a citizen complaint and where the officer's prior warning to other solicitors had been ignored would violate that individuals constitutional rights.

(Doc. 119 at 23). This argument misconstrues Branch's claim. Branch's Fourteenth

Amendment claim is not based on Odhner's offer of a "courtesy transport." Instead

---

[6] The R&R also discusses the actions of other Rush Township police officers in their encounters with individuals soliciting without a license. (Doc. 108 at 29-30). Odhner argues that the actions of other police officers are irrelevant to whether Odhner himself acted with discriminatory purpose. (Doc. 112 at 10). While the Court agrees, that does not change the Court's ultimate conclusion that, based on Odhner's own testimony, there is sufficient evidence in the record to create a genuine dispute of material fact as to whether Odhner acted with discriminatory purpose when he arrested Branch.

17

Branch's claim is that Odhner arrested Branch for violating an ordinance but did not arrest similarly situated white individuals who were violating the same ordinance. As the R&R correctly points out, the law clearly establishes that Branch should be free from this type of racial discrimination.

Therefore, the Court will overrule Odhner's objections, adopt this portion of the R&R and Amended R&R, and deny Odhner's Motion for Summary Judgment on this claim.

### 3. Section 1981 Claim

In Count V of Branch's Amended Complaint, he raises a section 1981 claim. The R&R recommends denying Odhner's Motion for Summary Judgement with respect to this claim, largely for the same reasons it recommended denying the Motion with respect to Branch's Fourteenth Amendment claim. (Doc. 108 at 30-33). The Amended R&R did not alter this recommendation, but did provide additional analysis with respect to Odhner's claim of qualified immunity. (Doc. 115 at 11-12). Odhner raises the same objections to this claim as he did to Brach's Fourteenth Amendment claim. For the same reasons those objections failed in the Fourteenth Amendment context, they fail here. Accordingly, the Court will adopt this portion of the R&R and deny Odhner's Motion for Summary Judgment on this claim.

### 4. False Arrest and False Imprisonment Claims

Branch Amended Complaint raises pendent state law claims for false arrest and false imprisonment. The R&R, while acknowledging that normally "a finding that an officer

18

had probable cause to arrest an individual for Fourth Amendment purposes will be dispositive of state-law false arrest and false imprisonment claims," found this matter to be different because a summary offense was at issue. (Doc. 108 at 38-39). In Pennsylvania, police do not have the authority to arrest a suspect for violation of a summary offense such as the Rush Township ordinance unless certain other factors are present. While the fact that the arrest was not authorized under state law was immaterial to the Fourth Amendment analysis, see Virginia v. Moore, 553 U.S. 164, 171-73, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008), the R&R concluded that such a fact may be material to the analysis of the state law claims. The R&R, however, concluded it was unnecessary to resolve such a question because Odhner was entitled to immunity as to the state law claims under the Pennsylvania Political Subdivision Torts Claims Act ("PPSTCA"). (Doc. 108 at 40-42).[7]

The Court agrees that Branch may maintain a state law claim for false arrest and false imprisonment on the basis that Odhner was not authorized under Pennsylvania law to make an arrest for violation of the ordinance under these circumstances. Accordingly, the Court will adopt the R&R's rational on this point. But see Kokinda v. Breiner, 557 F. Supp. 2d 581, 593-94 (M.D. Pa. 2008) (granting summary judgment on plaintiff's state law claims of false arrest and false imprisonment because officer had probable cause to believe that plaintiff had committed a summary offense).

---

[7] The Amended R&R withdrew its recommendation to grant summary judgment on the state law false arrest and false imprisonment claims on the basis of Caballes and Rodriguez. Just as the Court has found those cases to be inapplicable in the Fourth Amendment context, the Court similarly finds that those cases are not applicable to Branch's state law claims.

The Court, however, diverges from the R&R on the issue of immunity. The PPSTCA provides that, subject to certain exceptions that are not applicable here, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. The act further provides that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency." 42 Pa. C.S.A. § 8545. There is an exception to the immunity, however, if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S.A. § 8550. The Pennsylvania Supreme Court had defined "willful misconduct" as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

Here, the facts of this case are not so clear that Odhner is entitled to a finding at this stage that his conduct was not willful. Indeed, given that Odhner is a police officer who has gone through the requisite training and is generally charged with enforcing the law, one could reasonably infer that he has an understanding of (1) what actions constitute an arrest for purposes of the Fourth Amendment, and (2) when he is entitled under Pennsylvania Law to make an arrest for a summary offense. To hold, at this stage, that Odhner's actions were

20

not willful would require this Court to impermissibly making findings of fact about what Odhner did and did not know in the absence of any undisputed evidentiary support for such conclusions. *See Heron v. City of Phila.*, 987 F. Supp. 400, 405 (E.D. Pa. 1997) (denying summary judgment on the plaintiff's state law false arrest and false imprisonment claim "[b]ecause each of the torts alleged [was] based on acts that might be willful misconduct" and therefore "the defendants [were] not entitled to immunity for them.").

Accordingly, the Court will deny Odhner's Motion for Summary Judgment on Branch's state law false arrest and false imprisonment claims.

### 5. Intentional Infliction of Emotional Distress Claim

The R&R recommends granting summary judgment on Branch's intentional infliction of emotional distress claim because Branch's brief in opposition to Odhner's Motion for Summary Judgment explicitly states that Branch withdraws this claim.[8] (Doc. 108 at 43). Neither party has objected to this recommendation. Accordingly, the Court will grant Odhner's Motion with respect to Branch's claim of intentional infliction of emotional distress.

## B. Claims Against Rush Township

Counts II, IV, and V of the Amended Complaint allege that Rush Township is responsible for Odhner's unconstitutional actions. The R&R concluded that Branch failed to point to any evidence of a policy or custom that led to the unconstitutional acts and also failed to present any evidence that, in not enacting a policy against bias-based policing, the

---

[8] The Amended R&R did not alter this recommendation.

Township acted with deliberate indifference to a known or obvious risk. (Doc. 108 at 33-38).

Consequently, the R&R recommended granting the Township's Motion for Summary

Judgment.[9]

Branch has objected to this recommendation and argued that Rush Township had

the option of enacting a model policy against bias-based policing that was made available to

it but made the affirmative decision not to enact any policy. (Doc. 117 at 6-10). According

to Branch, "[h]ad Rush Township made the opposite policy choice—to adopt the necessary

policies for detention, search, seizure and bias-based policing, Odhner would have had the

necessary guidance not to violate Mr. Branch's constitutionally protected rights." (*Id.* at 10).

Branch's objections rely primarily on the proposition that

> a policy or custom may . . . exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (alteration and

quotation marks omitted). Thus, Branch argues, the R&R erred when it recommended

granting summary judgment on the basis that Branch had failed to point to any other

instances of unlawful arrests or seizures in Rush Township.

Even assuming that Branch is correct that a *Monell* claim based on a lack of a policy

may survive summary judgment without evidence of prior instances of unconstitutional acts,

---

[9] The Amended R&R did not alter this recommendation or add any additional analysis with respect to the municipal liability claims.

that would not relieve Branch of the obligation to produce *some* evidence to support his claim against the Township. Branch, however, has failed to point to any evidence that would tend to show that the need to enact a policy was "so obvious" and that the lack of a policy was "so likely to result in the violation of constitutional rights" that the failure to enact a policy amounted to deliberate indifference. *See Natale*, 318 F.3d at 584. Instead, Branch relies on conclusory statements in its objections and brief that, had the Township enacted one of the model policies available to it, Odhner would have known not to *purposefully* discriminate on the basis of race when he enforced the Township's ordinance. No such policy was necessary to guide Odhner's conduct as the obligation of a police officer acting under color of state law not to purposefully discriminate on the basis of race is deeply embedded in the constitutional law of this nation and cannot be said to be unknown or unknowable to a police officer like Odhner. Arguments to the contrary that have no evidentiary basis are inadequate in the face of a properly supported motion for summary judgment.[10] *See Veanus v. Northampton Cty. Prison*, 238 F. App'x 753, 754-55 (3d Cir. 2007) (finding summary judgment appropriate when the plaintiff presented no evidence that a lack of policy concerning bunk assignments in prison amounted to deliberate indifference to the serious medical needs of prisoners who require lower bunk assignments).

Accordingly, the Court will overrule Branch's objections, adopt this portion of the R&R, and grant Rush Township's Motion for Summary Judgment in full.

---

[10] Similarly, Branch has pointed to no evidence in the record to support his Fourth Amendment claim against Rush Township.

## V. Conclusion

For the reasons stated above, the Court will adopt the recommendations in

Magistrate Judge Saporito's Amended R&R, (Doc. 115), grant Rush Township's Motion for

Summary Judgment, (Doc. 88), and grant in part and deny in part Odhner's Motion for

Summary Judgment, (Doc. 89). A separate Order follows.

Robert D. Mariani
United States District Judge